# EXHIBIT B

Case 2:06-cv-00356-MHT-WC    Document 1-3    Filed 04/19/2006    Page 1 of 12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROY BROOKS, JR., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. CV- |
| COUNTRYWIDE HOME LOANS, | ) |
| INC., et al., | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT OF EMILY CEDILLO

Before me the undersigned, a notary public in and for said state and county, did personally appear Emily Cedillo, who did depose and say on oath as follows:

1. My name is Emily Cedillo. I am an employee of Countrywide Home Loans, Inc. ("Countrywide"). I am filing this affidavit on behalf and with the permission of Countrywide, and I understand that this affidavit is being filed in support of a Notice of Removal to federal court.

2. Countrywide Home Loans, Inc., is a New York corporation with its principal place of business in Calabasas, California.

3. In the course of my employment, I have reviewed certain information and Countrywide business records pertaining to Countrywide loan numbers 48649221 and 41813044, two mortgage loans issued to Roy Brooks, Jr. Loan number 48649221 was a first mortgage loan issued to Mr. Brooks by IAM Credit Union, and loan number 41813044 was a second mortgage loan issued to Mr. Brooks by the U.S. Small Business Administration. Both mortgages have been serviced by Countrywide on behalf of the

mortgage holders. True and correct copies of the first and second mortgages, as well as the corresponding promissory notes, are attached as Exhibit A.

_____
Emily Cedillo

STATE OF Texas            )
                          )
COUNTY OF Tarrant         )


Sworn to and subscribed before me this the 17th day of April, 2006.

_____
Notary Public
My commission expires: August 30, 2009



Control No. 2814-00419



**4/8/30 44**

SBA LOAN NO.
DLB 89164138-00

3 26 96

LEGAL DEPT.
Troy, Alabama 36081
(City, State, ZIP Code)

## U.S. SMALL BUSINESS ADMINISTRATION

### NOTE
(For Disaster Loans Only)

$11,400.00                                                                                                  (Date) February 1, 1996

For value received, the Undersigned promises to pay to the order of **U.S. Small Business Administration**, at its office in the City of **Denver**, State of **Colorado 80259-0001**, or, at holder's option, at such other place as may be designated from time to time by the Holder or U.S. Small Business Administration.

**Eleven Thousand Four Hundred and no/100 * * * * * * * * * *** dollars, with interest, on unpaid principal computed from the date of each advance to the Undersigned at the Annual Percentage Rate, of **Four percent (4.000%)** per annum, payment to be made in installments as follows:

> **Fifty-Six and no/100 ($56.00)**, dollars including principal and interest, payable **monthly**, beginning **Five (5)** months from the date hereof; the balance of principal and interest to be paid in full **Thirty (30) Years** from the date hereof; with the further provision that each said installment shall be applied first to accrued interest, and the balance, if any, to principal.

Payment of any installment of principal or interest owing on this Note may be made prior to the maturity date thereof without penalty.

The term "Indebtedness" as used herein shall mean the indebtedness evidenced by this Note, including principal, interest, and expenses whether contingent, now due or hereafter to become due and whether heretofore or contemporaneously herewith or hereafter contracted. The term "Collateral" as used in this Note shall mean any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof. The Collateral, and each part thereof, shall secure the Indebtedness and each part thereof. The covenants and conditions set forth or referred to in any and all instruments of hypothecation constituting the Collateral are hereby incorporated in this Note as covenants and conditions of the undersigned with the same force and effect as though such covenants and conditions were fully set forth herein.

The Indebtedness shall immediately become due and payable, without notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or involuntary, for the undersigned or for any of property of the undersigned, or upon the filing of a petition by or against the undersigned under the provisions of any State Insolvency law or under the provisions of the Bankruptcy Code of 1978, or upon the making by the undersigned of an assignment for the benefit of creditors. Holder is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the Indebtedness when due; (2) nonperformance by the undersigned of any agreement with, or any condition imposed by, Holder, or U.S. Small Business Administration (hereinafter called "SBA"), or either of them, with respect to the Indebtedness; (3) Holder's discovery of the undersigned's failure in any application of the undersigned to Holder or SBA to disclose any fact deemed by Holder to be material or of the making therein or in any of said agreements, or in any affidavit or other documents submitted in connection with said application or the Indebtedness, of any misrepresentation by, on behalf of, or for the benefit of the undersigned; (4) the reorganization (other than a reorganization pursuant to any of the provisions of the Bankruptcy Code of 1978) or merger or consolidation of the undersigned (or the making of any agreement therefor) without the prior written consent of Holder; (5) the undersigned's failure duly to account, to Holder's satisfaction, at such time or times as Holder may require, for any of the Collateral, or proceeds thereof, coming into the control of the undersigned; or (6) the institution of any suit affecting the undersigned deemed by Holder to affect adversely its interest hereunder in the Collateral or otherwise. Holder's failure to exercise its rights under this paragraph shall not constitute a waiver thereof.

Upon the nonpayment of the Indebtedness, or any part thereof, when due, whether by acceleration or otherwise, Holder is empowered to sell, assign, and deliver the whole or any part of the Collateral at public or private sale, without demand, advertisement or notice of time or place of sale or of any adjournment thereof, which are hereby expressly waived. After deducting all expenses incidental to or arising from such sale or sales, Holder may apply the residue of the proceeds thereof to the payment of the Indebtedness, as it shall deem proper, returning the excess, if any, to the undersigned. The undersigned hereby waives all right of redemption or appraisement whether before or after sale.

Holder is further empowered, to collect or cause to be collected or otherwise to be converted into money all or any part of the Collateral, by suit or otherwise, and to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collateral in transactions with the undersigned or any third party, irrespective of any assignment thereof by the undersigned, and without prior notice to or consent of the undersigned or any assignee.

Whenever any item of the Collateral shall not be paid when due, or otherwise shall be in default, whether or not the indebtedness, or any part thereof, has become due, Holder shall have the same rights and powers with respect to such item of the Collateral as are granted in respect thereof in this paragraph in case of nonpayment of the Indebtedness, or any part thereof, when due. None of the rights, remedies, privileges, or powers of Holder expressly provided for herein shall be exclusive, but each of them shall be cumulative with and in addition to every other right, remedy, privilege, and power now or hereafter existing in favor of Holder, whether at law or in equity, by statute or otherwise.

The undersigned agrees to take all necessary steps to administer, supervise, preserve, and protect the Collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect. The undersigned shall pay all expenses of any nature, whether incurred in or out of court,

SBA FORM 147 B (5-77) REF: SOP 50 35 PREVIOUS EDITIONS ARE OBSOLETE

Page 1

and whether incurred before or after this Note shall become due at its maturity date or otherwise, including but not limited to reasonable attorney's fees and costs, which Holder may deem necessary or proper in connection with the satisfaction of the indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon the Collateral. Holder is authorized to pay at any time and from time to time any or all of such expenses, add the amount of such payment to the amount of the indebtedness, and charge interest thereon at the rate specified herein with respect to the principal amount of this Note.

The security rights of Holder and its assigns hereunder shall not be impaired by Holder's sale, hypothecation or rehypothecation of any note of the undersigned or any item of the Collateral, or by any indulgence, including but not limited to (a) any renewal, extension, or modification which Holder may grant with respect to the indebtedness or any part thereof, or (b) any surrender, compromise, release, renewal, extension, exchange, or substitution which Holder may grant in respect of the Collateral, or (c) any indulgence granted in respect of any endorser, guarantor, or surety. The purchaser, assignee, transferee, or pledgee of this Note, the Collateral, any guaranty, and any other document (or any of them), sold, assigned transferred, pledged, or repledged, shall forthwith become vested with and entitled to exercise all the powers and rights given by this Note and all applications of the undersigned to Holder or SBA, as if said purchaser, assignee, transferee, or pledgee were originally named as Payee in this Note and in said application or applications.

This promissory note is given to secure a loan which SBA is making or in which it is participating and, pursuant to Part 101 of the Rules and Regulations of SBA (13 C.F.R. 101.1(d), this instrument is to be construed and (when SBA is the Holder or a party) in interest) enforced in accordance with applicable Federal law.

The undersigned understands and agrees that it is mandatory that all receipts, records, and such other evidence as is necessary and satisfactory to U.S. Small Business Administration be retained for three years from the date of the final disbursement on said note, which evidence shall indicate that the funds received have been used as directed by the authorization. Failure to furnish such evidence when requested shall raise a presumption that the proceeds of the loan have been wrongfully misapplied.

The undersigned understands and agrees that in the event he wrongfully misapplies the proceeds of the loan obtained, he shall be civilly liable to the Administration in an amount equal to one and one-half (1-1/2) times the original principal amount of the loan. It is understood that the term "indebtedness" as defined above shall include this amount, if imposed by the Administration.

### NOTICE OF RIGHT OF RESCISSION

You have a legal right under Federal Law to cancel this transaction, if you desire to do so, without any penalty or obligation within three (3) business days from date of this note.

No finance charge has been made for this transaction.

Execution

Dated this 21 Th day of Feb, 19 96.        *Roy Brooks Jr.* (signature)
Roy Brooks, Jr.

Page 2

NOTE:— Corporate applicants must execute Note, in Corporate name, by duly authorized officer, and must be affixed and duly attested; partnership applicants must execute Note in firm name, together with signature of a general partner.

MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
2120 Riverfront Drive, Suite 100
Little Rock, Arkansas, 72202

THIS INSTRUMENT PREPARED BY AND MAIL TO:
Terry J. Miller, Attorney/Advisor
U.S. SMALL BUSINESS ADMINISTRATION
One Baltimore Place, Suite 300
Atlanta, Georgia 30308
(404)347-3771

BROOKS, Roy, Jr.
# 2814-00419 Loan No. DLB 89164130-00

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

# MORTGAGE
## (Direct)

This mortgage made and entered into this 1st day of February 1996, by and between Roy Brooks, Jr., Post Office Box 691, Troy, Alabama 36081 (hereinafter referred to as mortgagor) and the Administrator of the Small Business Administration, an agency of the Government of the United States of America (hereinafter referred to as mortgagee), who maintains an office and place of business at 2120 Riverfront Drive, Suite 100, Little Rock, Arkansas, 72202

WITNESSETH, that for the consideration hereinafter stated, receipt of which is hereby acknowledged, the mortgagor does hereby mortgage, sell, grant, assign, and convey unto the mortgagee, his successors and assigns, all of the following described property situated and being in the County of Pike, State of Alabama

Described in Exhibit "A" attached hereto and made a part hereof.

Subject only to Prior lien(s) in favor of:

PARCELS I, II

Trust Deed/Mortgage held by IAM Federal Credit Union, Post Office Box 366, Daleville, Alabama 36322 with a current approximate balance of $28,000.00.

Together with and including all buildings, all fixtures including but not limited to all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air conditioning apparatus, and elevators (the mortgagor hereby declaring that it is intended that the items herein enumerated shall be deemed to have been permanently installed as part of the realty), and all improvements now or hereafter existing thereon; the hereditaments and appurtenances and all other rights thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, all rights of redemption, and the rents, issues, and profits of the above described property (provided, however, that the mortgagor shall be entitled to the possession of said property and to collect and retain the rents, issues, and profits until default hereunder). To have and to hold the same unto the mortgagee and the successors in interest of the mortgagee forever in fee simple or such other estate, if any, as is stated herein.

The mortgagor covenants that he is lawfully seized and possessed of and has the right to sell and convey said property; that the same is free from all encumbrances except as hereinabove recited; and that he hereby binds himself and his successors in interest to warrant and defend the title aforesaid thereto and every part thereof against the claims of all persons whomsoever.

This instrument is given to secure the payment of a promissory note dated February 1, 1996 in the principal sum of $11,400.00 and maturing on February 1, 2026.

1.      The mortgagor covenants and agrees as follows:

    a.      He will promptly pay the indebtedness evidenced by said promissory note at the times and in the manner therein provided.

1

*b.*   He will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, for which provision has not been made hereinbefore, and will promptly deliver the official receipts therefor to the said mortgagee.

*c.*   He will pay such expenses and fees as may be incurred in the protection and maintenance of said property, including the fees of any attorney employed by the mortgagee for the collection of any or all of the indebtedness hereby secured, or for foreclosure by mortgagee's sale, or court proceedings, or in any other litigation or proceeding affecting said premises. Attorneys' fees reasonably incurred in any other way shall be paid by the mortgagor.

*d.*   For better security of the indebtedness hereby secured, upon the request of the mortgagee, its successors or assigns, he shall execute and deliver a supplemental mortgage or mortgages covering any additions, improvements, or betterments made to the property hereinabove described and all property acquired by it after the date hereof (all in form satisfactory to mortgagee). Furthermore, should mortgagor fail to cure any default in the payment of a prior or inferior encumbrance on the property described by this instrument, mortgagor hereby agrees to permit mortgagee to cure such default, but mortgagee is not obligated to do so; and such advances shall become part of the indebtedness secured by this instrument, subject to the same terms and conditions.

*e.*   The rights created by this conveyance shall remain in full force and effect during any postponement or extension of the time of payment of the indebtedness evidenced by said promissory note or any part thereof secured hereby.

*f.*   He will continuously maintain hazard insurance, of such type or types and in such amounts as the mortgagee may from time to time require on the improvements now or hereafter on said property, and will pay promptly when due any premiums therefor. All insurance shall be carried in companies acceptable to mortgagee and the policies and renewals thereof shall be held by mortgagee and have attached thereto loss payable clauses in favor of and in form acceptable to the mortgagee. In event of loss, mortgagor will give immediate notice in writing to mortgagee, and mortgagee may make proof of loss if not made promptly by mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to mortgagee instead of to mortgagor and mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged or destroyed. In event of foreclosure of this mortgage, or other transfer of title to said property in extinguishment of the indebtedness secured hereby, all right, title, and interest of the mortgagor in and to any insurance policies then in force shall pass to the purchaser or mortgagee or, at the option of the mortgagee, may be surrendered for a refund.

*g.*   He will keep all buildings and other improvements on said property in good repair and condition; will permit, commit, or suffer no waste, impairment, deterioration of said property or any part thereof; in the event of failure of the mortgagor to keep the buildings on said premises and those erected on said premises, or improvements thereon, in good repair, the mortgagee may make such repairs as in its discretion it may deem necessary for the proper preservation thereof; and the full amount of each and every such payment shall be immediately due and payable and shall be secured by the lien of this mortgage.

*h.*   He will not voluntarily create or permit to be created against the property subject to this mortgage any lien or liens inferior or superior to the lien of this mortgage without the written consent of the mortgagee; and further, he will keep and maintain the same free from the claim of all persons supplying labor or materials for construction of any and all buildings or improvements now being erected or to be erected on said premises.

*i.*   He will not rent or assign any part of the rent of said mortgaged property or demolish, or remove, or substantially alter any building without the written consent of the mortgagee.

*j.*   All awards of damages in connection with any condemnation for public use of or injury to any of the property subject to this mortgage are hereby assigned and shall be paid to mortgagee, who may apply the same to payment of the installments last due under said note, and mortgagee is hereby authorized, in the name of the mortgagor, to execute and deliver valid acquittances thereof and to appeal from any such award.

*k.*   The mortgagee shall have the right to inspect the mortgaged premises at any reasonable time.

2.   Default in any of the covenants or conditions of this instrument or of the note or loan agreement secured hereby shall terminate the mortgagor's right to possession, use, and enjoyment of the property, at the option of the mortgagee or his assigns (it being agreed that the mortgagor shall have such right until default). Upon any such default, the mortgagee shall become the owner of all of the rents and profits accruing after default as security for the indebtedness secured hereby, with the right to enter upon said property for the purpose of collecting such rents and profits. This instrument shall operate as an assignment of any rentals on said property to that extent.

BROOKS, Roy, Jr.
2814-00419 / DLB 89164130-00

3.  The mortgagor covenants and agrees that if he shall fail to pay said indebtedness or any part thereof when due, or shall fail to perform any covenant or agreement of this instrument or the promissory note secured hereby, the entire indebtedness hereby secured shall immediately become due, payable, and collectible without notice, at the option of the mortgagee or assigns, regardless of maturity, and the mortgagee or his assigns may before or after entry sell said property without appraisement (the mortgagor having waived and assigned to the mortgagee all rights of appraisement):

(I) at judicial sale pursuant to the provisions of 28 U.S.C. 2001 (a); or

(II) at the option of the mortgagee, either by auction or by solicitation of sealed bids, for the highest and best bid complying with the terms of sale and manner of payment specified in the published notice of sale, first giving four weeks' notice of the time, terms, and place of such sale, by advertisement not less than once during each of said four weeks in a newspaper published or distributed in the county in which said property is situated, all other notice being hereby waived by the mortgagor (and said mortgagee, or any person on behalf of said mortgagee, may bid with the unpaid indebtedness evidenced by said note). Said sale shall be held at or on the property to be sold or at the Federal, county, or city courthouse for the county in which the property is located. The mortgagee is hereby authorized to execute for and on behalf of the mortgagor and to deliver to the purchaser at such sale a sufficient conveyance of said property, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends; and the said mortgagor hereby constitutes and appoints the mortgagee or any agent or attorney of the mortgagee, the agent and attorney in fact of said mortgagor to make such recitals and to execute said conveyance and hereby covenants and agrees that the recitals so made shall be effectual to bar all equity or right of redemption, homestead, dower, and all other exemptions of the mortgagor, all of which are hereby expressly waived and conveyed to the mortgagee; or

(III) take any other appropriate action pursuant to state or Federal statute either in state or Federal court or otherwise for the disposition of the property.

In the event of a sale as hereinabove provided, the mortgagor or any person in possession under the mortgagor shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over. The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative to the remedies for collection of said indebtedness provided by law.

4.  The proceeds of any sale of said property in accordance with the preceding paragraphs shall be applied first to pay the costs and expenses of said sale, the expenses incurred by the mortgagee for the purpose of protecting or maintaining said property, and reasonable attorneys' fees; secondly, to pay the indebtedness secured hereby; and thirdly, to pay any surplus or excess to the person or persons legally entitled thereto.

5.  In the event said property is sold at a judicial foreclosure sale or pursuant to the power of sale hereinabove granted, and the proceeds are not sufficient to pay the total indebtedness secured by this instrument and evidenced by said promissory note, the mortgagee will be entitled to a deficiency judgment for the amount of the *deficiency without regard to appraisement.*

6.  In the event the mortgagor fails to pay any Federal, state, or local tax assessment, income tax or other tax lien, charge, fee, or other expense charged against the property, the mortgagee is hereby authorized at his option to pay the same. Any sums so paid by the mortgagee shall be added to and become a part of the principal amount of the indebtedness evidenced by said note, subject to the same terms and conditions. If the mortgagor shall pay and discharge the indebtedness evidenced by said promissory note, and shall pay such sums and shall discharge all taxes and liens and the costs, fees, and expenses of making, enforcing, and executing this mortgage, then this mortgage shall be canceled and surrendered.

7.  The covenants herein contained shall bind and the benefits and advantages shall inure to the respective successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

8.  No waiver of any covenant herein or of the obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the note secured hereby.

9.  In compliance with section 101.1 (d) of the Rules and Regulations of the Small Business Administration [13 C.F.R. 101.1(d)], this instrument is to be construed and enforced in accordance with applicable Federal law.

10. A judicial decree, order, or judgment holding any provision or portion of this instrument invalid or unenforceable shall not in any way impair or preclude the enforcement of the remaining provisions or portions of this instrument.

11. Any written notice to be issued to the mortgagor pursuant to the provisions of this instrument shall be addressed to the mortgagor at Post Office Box 691, Troy, Alabama 36081 and any written notice to be issued to the mortgagee shall be addressed to the mortgagee at 2120 Riverfront Drive, Suite 100 Little Rock, Arkansas, 72202

IN WITNESS WHEREOF, the mortgagor has executed this instrument and the mortgagee has accepted delivery of this instrument as of the day and year aforesaid.

STATE OF ALABAMA      )
                      )ss
COUNTY OF Pike        )

_____
Roy Brooks, Jr.

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that

_____Roy Brooks Jr._____

whose name(s) is/are signed to the foregoing instrument, and who is/are known to me, acknowledged before me on this day that, being informed of the contents of the instrument, executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal, this the 21 day of February, 1996.

_____Melissa A. Ingram_____
Notary Public
My Commission Expires: 11-8-98

4

Name: BROOKS, Roy, Jr.

Control No. / Loan No: 2814-00419 / DLB 89164130-00

EXHIBIT "A"

Parcel I

Lot #3 and 4, according to the plat of Henderson Lake Subdivision #2, as recorded in the Office of the Judge of Probate of Pike County, Alabama, in Plat Book 2, page 96.

More commonly known as: 410 Hubbard Street, Troy, Alabama 36081

Parcel II

One house and lot in the City of Troy, Pike County, Alabama, being more particularly described as follows: Beginning at the Southwest corner of Lot No. 6, Plat No. 3 of the Henderson Lands in Oakland Heights, as recorded in the office of the Judge of Probate of Pike County, Alabama, Plat Book One, Page Sixty-Four, running thence Northward along the West line of said lot and extension of same 245 feet, thence East 60 feet, thence Southward to the Southeast corner of said Lot No. Six 250 feet, thence Westward along the South line of said Lot Six to the point of beginning.

More commonly known as: 415 Ice Street, Troy, Alabama 36081 and 120 Hubbard Street, Troy, Alabama 36322

Pike County, Alabama
I hereby certify that the within instrument was filed in my office for record on 23 day of Feb, 19 96 at 4:10 P M and that [illegible] tax of $17.00 has been paid and duly recorded in [illegible] book 425 page [illegible]
[illegible] Judge Probate

Page 5

STATE OF ALABAMA
COUNTY OF PIKE

# MORTGAGE

THIS MORTGAGE, made and entered into on JANUARY 11, 1994, by and between ROY BROOKS, JR., AN UNMARRIED MAN (hereinafter referred to as "Mortgagor", whether one or more) and the IAM FEDERAL CREDIT UNION (hereinafter referred to as "Mortgagee"), whose address is P. O. BOX 366, DALEVILLE, ALABAMA 36322.

## WITNESSETH:

WHEREAS, said Mortgagor, is justly indebted to Mortgagee in the amount of $31,500.00 together with any advances hereinafter provided, in the lawful money of the United States, which indebtedness is evidenced by a Promissory Note of even date herewith which bears interest as provided therein and which is payable in accordance with its terms, with the entire Debt, if not sooner paid, due and payable on JANUARY 11, 2009.

NOW THEREFORE, in consideration of the premises and of said indebtedness and in order to secure prompt payment of the same according to the terms and stipulations contained in said Promissory Note and any and all extensions and renewals thereof, or of any part thereof, and any other amounts that the Mortgagee or its successors or assigns may advance to the Mortgagor before the payment in full of said Mortgage indebtedness, and any additional interest that may become due on any such extensions, renewals and advances or any part thereof (the aggregate amount of such debt, including any extensions, renewals, advances and interest due thereon, is hereinafter collectively called "Debt") and compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the real estate described as follows:

PARCEL I:
A LOT IN THE CITY OF TROY, PIKE COUNTY, ALABAMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF LOT NO. 6, PLAT NO. 3 OF THE HENDERSON LANDS IN OAKLAND HEIGHTS, AS RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF PIKE COUNTY, ALABAMA, PLAT BOOK ONE, PAGE SIXTY-FOUR, RUNNING THENCE NORTHWARD ALONG THE WEST LINE OF SAID LOT AND EXTENSION OF SAME 245 FEET, THENCE EAST 60 FEET, THENCE SOUTHWARD TO THE SOUTHEAST CORNER OF SAID LOT NO. SIX 250 FEET, THENCE WESTWARD ALONG THE SOUTH LINE OF SAID LOT SIX TO THE POINT OF BEGINNING.

SITUATED IN PIKE COUNTY, ALABAMA.

PARCEL II:
LOT 3 AND 4, ACCORDING TO THE PLAT OF HENDERSON LAKE SUBDIVISION #2, AS RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF PIKE COUNTY, ALABAMA, IN PLAT BOOK 2, PAGE 96.

SITUATED IN PIKE COUNTY, ALABAMA.

***MORTGAGOR STATES THE ABOVE DESCRIBED PROPERTY REPRESENTS NO PART OF HIS HOMESTEAD.***

Source of Title: VOLUME 152 PAGES 405 AND 424

TO HAVE AND TO HOLD the real estate unto the Mortgagee, its successors and assigns forever, together with all the improvements now or hereafter erected on the real estate and all easements, rights, privileges, tenements, appurtenances, rents, royalties, mineral, oil and gas rights, water, water rights and water stock and all fixtures now or hereafter attached to the same real estate, all of which, including replacements and additions thereto shall be deemed to be and remain a part of the real estate covered by this Mortgage; and all of the foregoing are hereinafter referred to as "Real Estate" and shall be conveyed by this Mortgage.

The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, except as stated herein, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee against the lawful claims of all persons, except as otherwise herein provided.

For the purpose of securing the payment of the Debt, the Mortgagor agrees to: (1) pay promptly when due all taxes, assessments, charges, fines and other liens which may attain priority over this Mortgage (hereinafter jointly called "Liens"), when imposed legally upon the Real Estate and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and by such companies as may be satisfactory to the Mortgagee; against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsements, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount sufficient to cover the Debt. The original insurance policy, and all replacements therefor, shall be delivered to and held by the Mortgagee until the Debt is paid in full. The original insurance policy and all replacements therefor must provide that they may not be canceled without the insurer giving at least ten days prior written notice of such cancellation to the Mortgagee. The Mortgagor hereby assigns and pledges to the Mortgagee as further security for the payment of the Debt, each and every policy of hazard insurance now or hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all of the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to returned premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this Mortgage subject to foreclosure, and this Mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable, the Mortgagee may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstructing the improvements located on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens shall become a debt due by the Mortgagor to the Mortgagee and at once payable without demand upon or notice to the Mortgagor, and shall be secured by the lien of this Mortgage, and shall bear interest from the date of payment by the Mortgagee until paid at the rate of interest provided for in the Promissory Note. The Mortgagor agrees to pay promptly when due the principal and interest of the Debt and keep and perform every other covenant and agreement of the Promissory Note secured hereby.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee, the following described property rights, claims, rents, profits, issues and revenues: (1) All rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, profits, issues and revenues; (2) All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments made for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain, shall be paid to the Mortgagee. The Mortgagee is hereby authorized on behalf of and in the name of the Mortgagor to execute and deliver valid acquittances for, or appeal from, any such judgments or awards. The Mortgagee may apply all such sums received, or any part thereof, after the payment of all the Mortgagee's expenses incurred in connection with any proceeding or transaction described in this subparagraph 2, including court costs and attorney's fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount or any part thereof so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor hereby incorporates by reference into this Mortgage all of the provisions of the Promissory Note of even date herewith. Mortgagor agrees that, in the event that any provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provisions of this Mortgage or the Promissory Note which can be given effect. It is agreed that the provisions of the Mortgage and the Promissory Note are severable and that, if one or more of the provisions contained in this Mortgage or in the Promissory Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof; this Mortgage shall be construed as if such invalid, illegal or unenforceable provision has never been contained herein. If enactment or expiration of applicable laws has the effect of rendering any provision of the Promissory Note or this Mortgage unenforceable according to its terms, Mortgagee, at its option, may require the immediate payment in full of all sums secured by this mortgage and may invoke any remedies permitted hereunder.

The Mortgagor agrees to keep the Real Estate and all improvements located thereon in good repair and further agrees not to commit waste or permit impairment or deterioration of the Real Estate, and at all times to maintain such improvements in as good condition as they are, reasonable wear and tear excepted.

If all or any part of the Real Estate or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage (b) the creation of a purchase money security interest for household appliances (c) the transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Real Estate is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request.

The Mortgagor agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this Mortgage shall be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its duly authorized representatives.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceedings being commenced for the foreclosure of this Mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents, issues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

Upon request of Mortgagor (separately or severally, if more than one), Mortgagee, at Mortgagee's option prior to release of this Mortgage, may make future advances to Mortgagor (separately or severally, if more than one). Such future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are received hereby.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which debt includes the indebtedness evidenced by the Promissory Note hereinabove referred to and any or all extensions and renewals thereof and advances and any interest due on such extensions, renewals and advances) and all other indebtedness secured hereby and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens or insurance premiums, and interest thereon, and fulfills all of mortgagor's obligations under this Mortgage, this conveyance shall be null and void. But if: (1) any warranty or representation made in this Mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this Mortgage; (3) default is made in the payment to the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this Mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate becomes endangered by reason of the enforcement of any prior lien or encumbrance; (6) any statement of lien is filed against the Real Estate, or any part thereof, under the statutes of Alabama relating to the liens of mechanics and materialmen (without regard to the existence or nonexistence of the debt or the lien on which such statement is based; (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principal or interest of the Debt, or by virtue of which any tax lien or assessment upon the Real Estate shall be chargeable against the owner of this Mortgage; (8) any of the stipulations contained in this Mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability, generally to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, (f) file an answer admitting the material allegations of, or consent to, or default in answering a petition filed against such Mortgagor in any bankruptcy, reorganizing, or insolvency proceedings; or (g) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them, if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located to sell the Real Estate in front of the courthouse door of said county at public outcry, to the highest bidder for cash and to apply the proceeds of said sale as follows: first, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, liens or other encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be credited to the Mortgagor; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale had under the terms of this Mortgage and may purchase the Real Estate if the highest bidder thereof. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner the Mortgagee may elect. The Mortgagor agrees to pay all costs, including reasonable attorney's fees, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt, or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien or encumbrance on the Real Estate, unless this Mortgage is herein expressly made subject to any such lien or encumbrance; and/or all costs incurred in the foreclosure of this Mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this Mortgage. The purchaser at any such sales shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and Mortgage, or auctioneer, shall execute to the purchaser for and in the name of the Mortgagor a deed to the Real Estate.

Mortgagor waives all rights of homestead exemption in the Real Estate and relinquishes all rights of curtesy and dower in the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this Mortgage, whether one or more natural persons. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned, and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successors and assigns.

Mortgagor agrees that all of the provisions printed above are agreed to and accepted by Mortgagor and constitute valid and enforceable provisions of this Mortgage. IN WITNESS WHEREOF, the undersigned Mortgagor has executed this instrument on JANUARY 11, 1994.

_____
ROY BROOKS, JR.

STATE OF ALABAMA
COUNTY OF DALE

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that ROY BROOKS, JR., AN UNMARRIED MAN whose name(s) is (are) signed to the foregoing conveyance, and who is (are) known to me, acknowledged before me on this day that, being informed of the contents of said conveyance, (s)he (they) executed the same voluntarily on the date the same bears date. Given under my hand and official seal on JANUARY 11, 1994.

_____
Notary Public

My commission expires: MY COMMISSION EXPIRES FEB. 26, 1994

THIS INSTRUMENT PREPARED BY: TRIMMIER, ATCHISON AND HAYLEY, P.C., 22 Inverness Center Parkway, Suite 210, Birmingham, AL 35242
NOTE TO CLERK OF COURT: Mortgagee certifies that if at any point this mortgagee is assigned to a non-tax exempt holder that such Holder will comply with Alabama Code 40-22-2(5)(1975).