STATE OF ALABAMA
COUNTY OF PIKE

## MORTGAGE

THIS MORTGAGE, made and entered into on JANUARY 11, 1994, by and between ROY BROOKS, JR., AN UNMARRIED MAN (hereinafter referred to as "Mortgagor", whether one or more) and the IAM FEDERAL CREDIT UNION (hereinafter referred to as "Mortgagee"), whose address is P. O. BOX 366, DALEVILLE, ALABAMA 36322.

**WITNESSETH:**

WHEREAS, said Mortgagor, is justly indebted to Mortgagee in the amount of $31,500.00 together with any advances hereinafter provided, in the lawful money of the United States, which indebtedness is evidenced by a Promissory Note of even date herewith which bears interest as provided therein and which is payable in accordance with its terms, with the entire Debt, if not sooner paid, due and payable on JANUARY 11, 2009.

NOW THEREFORE, in consideration of the premises and of said indebtedness and in order to secure prompt payment of the same according to the terms and stipulations contained in said Promissory Note and any and all extensions and renewals thereof, or of any part thereof, and any other amounts that the Mortgagee or its successors or assigns may advance to the Mortgagor before the payment in full of said Mortgage indebtedness, and any additional interest that may become due on any such extensions, renewals and advances or any part thereof (the aggregate amount of such debt, including any extensions, renewals, advances and interest due thereon, is hereinafter collectively called "Debt") and compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the real estate described as follows:

PARCEL I:
A LOT IN THE CITY OF TROY, PIKE COUNTY, ALABAMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF LOT NO. 6, PLAT NO. 3 OF THE HENDERSON LANDS IN OAKLAND HEIGHTS, AS RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF PIKE COUNTY, ALABAMA, PLAT BOOK ONE, PAGE SIXTY-FOUR, RUNNING THENCE NORTHWARD ALONG THE WEST LINE OF SAID LOT AND EXTENSION OF SAME 245 FEET, THENCE EAST 60 FEET, THENCE SOUTHWARD TO THE SOUTHEAST CORNER OF SAID LOT NO. SIX 250 FEET, THENCE WESTWARD ALONG THE SOUTH LINE OF SAID LOT SIX TO THE POINT OF BEGINNING.

SITUATED IN PIKE COUNTY, ALABAMA.

PARCEL II:
LOT 3 AND 4, ACCORDING TO THE PLAT OF HENDERSON LAKE SUBDIVISION #2, AS RECORDED IN THE OFFICE OF THE JUDGE OF PROBATE OF PIKE COUNTY, ALABAMA, IN PLAT BOOK 2, PAGE 96.

SITUATED IN PIKE COUNTY, ALABAMA.

***MORTGAGOR STATES THE ABOVE DESCRIBED PROPERTY REPRESENTS NO PART OF HIS HOMESTEAD.***

Source of Title: VOLUME 152 PAGES 405 AND 424

TO HAVE AND TO HOLD the real estate unto the Mortgagee, its successors and assigns forever, together with all the improvements now or hereafter erected on the real estate and all easements, rights, privileges, tenements, appurtenances, rents, royalties, mineral, oil and gas rights, water, water rights and water stock and all fixtures now or hereafter attached to the same real estate, all of which, including replacements and additions thereto shall be deemed to be and remain a part of the real estate covered by this Mortgage; and all of the foregoing are hereinafter referred to as "Real Estate" and shall be conveyed by this Mortgage.

The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, except as stated herein, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee against the lawful claims of all persons, except as otherwise herein provided.

For the purpose of securing the payment of the Debt, the Mortgagor agrees to: (1) pay promptly when due all taxes, assessments, charges, fines and other liens which may attain priority over this Mortgage (hereinafter jointly called "Liens"), when imposed legally upon the Real Estate and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and by such companies as may be satisfactory to the Mortgagee; against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsements, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount sufficient to cover the Debt. The original insurance policy, and all replacements therefor, shall be delivered to and held by the Mortgagee until the Debt is paid in full. The original insurance policy and all replacements therefor must provide that they may not be canceled without the insurer giving at least ten days prior written notice of such cancellation to the Mortgagee. The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now or hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all of the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to returned premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this Mortgage subject to foreclosure, and this Mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable, the Mortgagee may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstructing the improvements located on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens shall become a debt due by the Mortgagor to the Mortgagee and at once payable without demand upon or notice to the Mortgagor, and shall be secured by the lien of this Mortgage, and shall bear interest from the date of payment by the Mortgagee until paid at the rate of interest provided for in the Promissory Note. The Mortgagor agrees to pay promptly when due the principal and interest of the Debt and keep and perform every other covenant and agreement of the Promissory Note secured hereby.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee, the following described property rights, claims, rents, profits, issues and revenues: (1) All rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, profits, issues and revenues; (2) All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments made for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain, shall be paid to the Mortgagee. The Mortgagor is hereby authorized on behalf of the Mortgagor to execute and deliver valid acquittances for, or appeal from, any such judgments or awards. The Mortgagee may apply all such sums received, or any part thereof, after the payment of all the Mortgagee's expenses incurred in connection with any proceeding or transaction described in this subparagraph 2, including court costs and attorney's fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount or any part thereof so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor hereby incorporates by reference into this Mortgage all of the provisions of the Promissory Note of even date herewith. Mortgagor agrees that, in the event that any provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provisions of this Mortgage or the Promissory Note which can be given effect. It is agreed that the provisions of the Mortgage and the Promissory Note are severable and that, if one or more of the provisions contained in this Mortgage or in the Promissory Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof; this Mortgage shall be construed as if such invalid, illegal or unenforceable provision has never been contained herein. If enactment or expiration of applicable laws has the effect of rendering any provision of the Promissory Note or this Mortgage unenforceable according to its terms, Mortgagee, at its option, may require the immediate payment in full of all sums secured by this mortgage and may invoke any remedies permitted hereunder.

The Mortgagor agrees to keep the Real Estate and all improvements located thereon in good repair and further agrees not to commit waste or permit impairment or deterioration of the Real Estate, and at all times to maintain such improvements in as good condition as they are, reasonable wear and tear excepted.

**EXHIBIT 2**
(Evidentiary Submission)

CHL/Brooks00631

all or any part of the Real Estate or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage (b) the creation of a purchase money security interest for household appliances (c) the transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Real Estate is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request.

The Mortgagor agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this Mortgage shall be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its duly authorized representatives.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceedings being commenced for the foreclosure of this Mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents, issues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

Upon request of Mortgagor (separately or severally, if more than one), Mortgagee, at Mortgagee's option prior to release of this Mortgage, may make future advances to Mortgagor (separately or severally, if more than one). Such future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are received hereby.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which debt includes the indebtedness evidenced by the Promissory Note hereinabove referred to and any or all extensions and renewals thereof and advances and any interest due on such extensions, renewals and advances) and all other indebtedness secured hereby and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens or insurance premiums, and interest thereon, and fulfills all of mortgagor's obligations under this Mortgage, this conveyance shall be null and void. But if (1) any warranty or representation made in this Mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this Mortgage; (3) default is made in the payment to the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this Mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate becomes endangered by reason of the enforcement of any prior lien or encumbrance; (6) any statement of lien is filed against the Real Estate, or any part thereof, under the statutes of Alabama relating to the liens of mechanics and materialmen (without regard to the existence or nonexistence of the debt or the lien on which such statement is based; (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principal or interest of the Debt, or by virtue of which any tax lien or assessment upon the Real Estate shall be chargeable against the owner of this Mortgage; (8) any of the stipulations contained in this Mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability, generally to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, (f) file an answer admitting the material allegations of, or consent to, or default in answering a petition filed against such Mortgagor in any bankruptcy, reorganizing, or insolvency proceedings; or (g) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them, if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor or of the Real Estate or of all or of a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located to sell the Real Estate in front of the courthouse door of said county at public outcry; to the highest bidder for cash and to apply the proceeds of said sale as follows: first, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, liens or other encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be credited to the Mortgagor; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of the sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale had under the terms of this Mortgage and may purchase the Real Estate if the highest bidder thereof. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner the Mortgagee may elect. The Mortgagor agrees to pay all costs, including reasonable attorney's fees, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt, or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien or encumbrance on the Real Estate, unless this Mortgage is herein expressly made subject to any such lien or encumbrance; and/or all costs incurred in the foreclosure of this Mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this Mortgage. The purchaser at any such sales shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and Mortgage, or auctioneer, shall execute to the purchaser for and in the name of the Mortgagor a deed to the Real Estate.

Mortgagor waives all rights of homestead exemption in the Real Estate and relinquishes all rights of curtesy and dower in the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this Mortgage, whether one or more natural persons. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned, and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successors and assigns.

Mortgagor agrees that all of the provisions printed above are agreed to and accepted by Mortgagor and constitute valid and enforceable provisions of this Mortgage. IN WITNESS WHEREOF, the undersigned Mortgagor has executed this instrument on JANUARY 11, 1994.

ROY BROOKS, JR.

STATE OF ALABAMA
COUNTY OF DALE

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that ROY BROOKS, JR., AN UNMARRIED MAN whose name(s) is (are) signed to the foregoing conveyance, and who is (are) known to me, acknowledged before me on this day that, being informed of the contents of said conveyance, (s)he (they) executed the same voluntarily on the date the same bears date. Given under my hand and official seal on JANUARY 11, 1994.

Notary Public

My commission expires:

MY COMMISSION EXPIRES FEB. 26, 1994

THIS INSTRUMENT PREPARED BY: TRIMMIER, ATCHISON AND HAYLEY, P.C., 22 Inverness Center Parkway, Suite 210, Birmingham, AL 35242
NOTE TO CLERK OF COURT: Mortgagee certifies that if at any point this mortgagee is assigned to a non-tax exempt holder that such Holder will comply with Alabama Code 40-22-2(5)(1975).

CHL/Brooks00632

THIS DOCUMENT PREPARED BY
AND WHEN RECORDED
RETURN TO:

Michael Barnett
Beal Bank/179295
6000 Legacy Drive, #200E
Plano, TX 75024


ORIGINAL SENT FOR RECORDING
OCT 13 2003

THIS SPACE FOR RECORDER'S USE ONLY

### ASSIGNMENT OF MORTGAGE
(This Assignment of Mortgage is being re-recorded to correct Assignee
from LLP Mtg Ltd to LPP Mtg Ltd)
{PIKE COUNTY, AL}

**ASSIGNOR:** IAM Federal Credit Union, P.O. BOX 366, Daleville, AL 36322

**ASSIGNEE:** LPP Mortgage Ltd, 6000 Legacy Drive, Plano, TX 75024

CHL/Brooks00330

ASSIGNMENT OF MORTGAGE

STATE OF ALABAMA
COUNTY OF ~~DALE~~ PIKE

FOR VALUE RECEIVED, the undersigned IAM Federal Credit Union, P. O. Box 366, Daleville, Alabama 36322, does hereby grant, bargain, sell, convey, assign and deliver unto ~~LPP, Inc.,~~ LPP Mortgage Ltd. a corporation, its successors and assigns, all of its right, title and interest in and to a certain mortgage executed by Roy Brooks, Jr., to IAM Federal Credit Union, in the principal sum of Thirty-one Thousand Five Hundred Dollars and 00/100 ($31,500.00) dated January 11, 1994, and filed for record on January 20, 1994, in the office of the Probate Judge of Pike County, Alabama, and recorded in Volume 413, Page 72, Record of Mortgages, described as follows:

Parcel 1: A lot in the city of Troy, Pike County, Alabama, more particularly described as follows: Beginning at the southwest corner of Lot No. 6, Plat No. 3 of the Henderson Lands in Oakland Heights, as recorded in the office of the Judge of Probate of Pike County, Alabama, Plat Book One, Page Sixty-four, running thence northward along the west line of said lot and extension of same 245 feet, thence east 60 feet, thence southward to the southeast corner of said lot No.6 250 feet thence westward along the south line of said Lot Six to the point of beginning.

Parcel 2: Lot 3 and 4, according to the Plat of Henderson Lake Subdivision #2, as recorded in the office of the Judge of Probate of Pike County, Alabama, in Plat Book 2, Page 96.

Both parcels are situated in Pike Count, Alabama; together with the debt thereby secured, the notes therein described, and the lands and property therein conveyed.

TO HAVE AND TO HOLD unto the said ~~LPP, Inc.,~~ LPP Mortgage Ltd. its successors and assigns forever.

IN WITNESS WHEREOF, the said IAM Federal Credit Union has caused its name to be signed hereto and its seal to be affixed by Deborah L. McRae, its Manager, who is duly authorized on this the 23rd day of July, 2003.

ATTEST:                                IAM FEDERAL CREDIT UNION

_____              By _Deborah L. McRae_____

                                       Its _Manager_____

CHL/Brooks00331

STATE OF ALABAMA
COUNTY OF DALE

I, __Linda Black__, a Notary Public in and for said county, in said State hereby certify that Deborah L. McRae whose name as Manager of IAM Federal Credit Union, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that being informed of the contents of the conveyance, she as officer and with full authority executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal, the 23rd day of July, 2003.

_Linda Black_
Notary Public
My Commission Expires _____

LINDA BLACK
Notary Public, AL State At Large
My Comm. Expires Aug. 10, 2004

CHL/Brooks00332