IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROY BROOKS, JR.,

        **Plaintiff,**

v.

COUNTRYWIDE HOME LOANS, INC.
ET AL.,

        **Defendants.**

CIVIL ACTION NO.
CV - CV-2:06CV356-MHT

## AFFIDAVIT OF BETH MCFADDEN ROUSE

      Before me the undersigned, a notary public in and for said state and said county, did personally appear Beth McFadden Rouse, who did depose and say on oath as follows:

    1.     My name is Beth McFadden Rouse.  I am an attorney with the law firm of McFadden, Lyon and Rouse, L.L.C., in Mobile, Alabama.  Based on my personal knowledge and my review of business records generated by me and others under my employment in the normal course of business, I testify as follows:

    2.     In or around December 2001, LPP Mortgage Ltd, f/k/a Loan Participant Partners, Ltd., an affiliate of Beal Bank (hereinafter, "LPP") referred a defaulted second mortgage (hereinafter, the "Second Mortgage") executed by Roy Brooks, Jr., to my firm for foreclosure. The Second Mortgage was dated February 1, 1996, and was recorded at Mortgage Book 425, page 213 records of the Probate Court of Pike County.  True and correct copies of the Second Mortgage and the subsequent assignment of the Second Mortgage by the original mortgagee to LPP are attached hereto as Exhibit 1.

**EXHIBIT 4**
**(Evidentiary Submission)**

3.       As of December 2001, the properties subject to the Second Mortgage were also the subject of a prior first mortgage (hereinafter, the "First Mortgage") executed by Brooks to IAM Credit Union.   The First Mortgage was dated January 11, 1994, and was recorded at Mortgage Book 413, page 72 of the records of the Probate Court of Pike County.   Because LPP did not hold the First Mortgage (held by IAM Credit Union), LPP was not in a "first lien" position in 2001.  The Second Mortgage was not foreclosed at that time.

4.       In July 2003, LPP acquired the First Mortgage from IAM Credit Union, thus obtaining a first lien position.   The assignment of the First Mortgage to LPP was recorded in Misc. Book 2003, Page 163, of the records of the Probate Court of Pike County.   True and correct copies of the First Mortgage and the assignment of the First Mortgage to LPP are attached hereto as Exhibit 2.

5.       In late 2003, Countrywide Home Loans, Inc. ("Countrywide") began servicing the First and Second Mortgages on behalf of LPP.   In February 2004, Countrywide referred the First and Second Mortgages to our firm for foreclosure.   I recommended to Countrywide that it foreclose only the Second Mortgage subject to the First Mortgage.

6.       On June 21, 2004, I mailed Roy Brooks a letter notifying him of the default under the Second Mortgage, of the amount due under the Second Mortgage ($14,894.57), and that our firm had been instructed by Countrywide to proceed with foreclosure. A true and correct copy of my letter of June 21, 2004, is attached hereto as Exhibit 3.

7.       On July 16, 2004, I mailed notices to Brooks and to the residents/occupants of the three collateral properties subject to the Second Mortgage that the Second Mortgage was being foreclosed and that the properties would be sold at public auction to satisfy the outstanding mortgage debt.  Our firm also advertised the sale in a local newspaper in accordance with the

Second Mortgage and applicable law. The foreclosure sale was initially scheduled for August 23, 2004. True and correct copies of my July 16th letters to Brooks and the newspaper advertisements of the sale are attached hereto as Exhibit 4.

8.      In August 2004, Countrywide requested that I postpone the foreclosure sale and the sale was rescheduled for October 5, 2004.

9.      By letter to me dated October 4, 2004, Brooks' attorney, James N. Thomas, requested that Countrywide postpone the foreclosure sale again because some of the properties had been damaged by Hurricane Ivan in September 2004. I informed Countrywide of Mr. Thomas' request, and Countrywide agreed to postpone the sale until October 20, 2004. The sale was then postponed again, to November 10, 2004. True and correct copies of my e-mail correspondence with Mr. Thomas confirming the postponement until November 10, 2004, are attached hereto as Exhibit 5.

10.     I was instructed by Countrywide to proceed with the foreclosure on November 10, 2004. My firm retained Brandon Coots of the law firm of Jones & Coots, L.L.C., in Luverne, Alabama, to perform the public foreclosure sale in Pike County, Alabama on that date. At approximately 1:44 pm on November 10, 2004, I received a fax from Mr. Coots advising me that the sale had been conducted at 11:30 am on November 10, 2004, and that the properties had been purchased at the sale by the mortgagee for $6,750.00. A true and correct copy of Mr. Coots' letter is attached hereto as Exhibit 6.

11.     Later on the afternoon of November 10, 2004, my office was contacted by Mr. Thomas, who informed my office that he was "under the impression" that the foreclosure sale would be delayed until insurance claim proceeds were received by Countrywide and who requested that the sale be postponed until later on the afternoon of November 10th. Rachel Price,

3

an employee of my office, took the call, and her contemporaneously generated business record of the call is attached hereto as Exhibit 7.

12.      The foreclosure sale had already occurred before Mr. Thomas called my office on November 10th (*see* paragraph 10 above).  I had not made any agreement on behalf of Countrywide to postpone the foreclosure sale beyond November 10, 2004, and I have no knowledge of anyone else making such an agreement on behalf of Countrywide.  I never informed Mr. Brooks or his attorney (James Thomas) that the foreclosure sale would be postponed beyond November 10, 2004.

13.      A true and correct copy of the Auctioneer's Deed conveying the property subject to the Subject Mortgage to the mortgagee, LPP, is attached hereto as Exhibit 8.   The Auctioneer's Deed was recorded in Deed Book 2004, Page 2738, of the records of the Probate Court of Pike County.

14.      In March 2005, Countrywide advised me that Mr. Brooks had inquired regarding the balances of his Countrywide loans and the possibility of redeeming the property from foreclosure.  On March 11, 2005, based on information provided to me by Countrywide, I faxed Mr. Brooks a letter (a true and correct copy of which is attached as Exhibit 9) providing him with the total amount needed for him to exercise his statutory right to pay both mortgages and to redeem the properties from foreclosure ($43,970.38).

15.      In response, on March 21, 2005, Mr. Brooks' lawyer (James Thomas) wrote me a letter requesting additional information regarding the application of the insurance claim proceeds to the loan balances. On March 31, 2005, I responded to Mr. Thomas by letter again providing the redemption/payoff figures for the two loans ($43,970.38) and itemizing the two insurance claim payments ($2,459.85 and $735.44) received by Countrywide in January 2005.   True and

4

correct copies of Mr. Thomas' letter of March 21, 2005, and of my March 31, 2005, letter to him are attached hereto as Exhibit 10.

16.    To my knowledge, Brooks never made any effort after March 21, 2005, to redeem the properties from foreclosure.

Beth McFadden Rouse

STATE OF ALABAMA        )
                        )
COUNTY OF MOBILE        )

Sworn to and subscribed before me this the 12 day of March, 2007.

Notary Public
My commission expires:  My Commission Expires 04-11-07

5