IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROY BROOKS, JR., | |
| **Plaintiff,** | |
| v. | CIVIL ACTION NO.<br>CV - CV-2:06CV356-MHT |
| COUNTRYWIDE HOME LOANS, INC.<br>ET AL., | |
| **Defendants.** | |

### DECLARATION OF EMILY CEDILLO-GALINDO

My name is Emily Cedillo-Galindo. I am employed by Countrywide Home Loans, Inc. ("Countrywide"), as a Team Leader in the Case Management Group. I am filing this affidavit on behalf of and with the permission of Countrywide, and I understand that this Affidavit is being filed with a Motion for Summary Judgment in the above-referenced lawsuit.

In the course of my employment, I have reviewed certain information and Countrywide records pertaining to Countrywide loan numbers 48649221 and 41813044, a first and second mortgage on properties previously owned by borrower Roy Brooks, Jr (hereinafter collectively, "the Brooks loans"). Among the business records that I reviewed were the loan servicing histories for the two loans which are attached hereto as Exhibits 1 and 2. Based on my review of these and other Countrywide records pertaining to the Brooks loans, which were generated in the normal course of business, I hereby state the following facts pertaining to those loans:

1.  In or around November 2003, Countrywide began subservicing loan number 41813044 on behalf of the mortgage holder, LPP Mortgage Ltd, f/k/a Loan Participant Partners, Ltd. (hereinafter, "LPP"). Loan 41813044 was secured by a second mortgage (the "Second

**EXHIBIT 5**
(Evidentiary Submission)

Mortgage") executed by Mr. Brooks on February 1, 1996, to the United States Small Business Administration, which mortgage was subsequently assigned to LPP. True and correct copies of the Second Mortgage and the assignment of the Second Mortgage to LPP, as included in Countrywide's loan file, are attached hereto as Exhibit 3.

2. The Second Mortgage boarded Countrywide's servicing system on November 22, 2003, with a principal unpaid balance of $9,287.00. (Exh. 1, p. "CHL/Brooks" 3.)

3. Also in late 2003 or early January 2004, Countrywide began subservicing loan number 48649221 on behalf of the mortgage holder, LPP. Loan 48649221 was secured by a first mortgage (the "First Mortgage") executed by Mr. Brooks on January 11, 1994, to IAM Credit Union. True and correct copies of the First Mortgage and assignment to LPP, as included in Countrywide's loan file, are attached hereto as Exhibit 4.

4. The First Mortgage boarded Countrywide's system on January 2, 2004, with a principal unpaid balance of $23,324.50. (Exh. 2, p. "CHL/Brooks" 78.)

5. Both the First and Second Mortgage were secured by the same three properties in Troy, Alabama, located at (1) 410 Hubbard Street, (2) 120 Hubbard Street, and (3) 415 Ice Street. Mr. Brooks has maintained at least two other mailing addresses during the time that Countrywide serviced his loans: (1) 319 Dean Street, Troy, Alabama; and (2) 907 Main Street, Brundidge, Alabama, though neither of those properties were subject to the two mortgages.

6. In February 2004, Countrywide referred the Brooks loans to outside foreclosure counsel, the law firm of McFadden, Lyon & Rouse, LLP, in Mobile, Alabama. (Exh. 1, p. "CHL/Brooks" 36.)

7. In August 2004, Brooks requested an opportunity to enter into a "work-out" agreement with Countrywide to attempt to cure the outstanding mortgage delinquency over a period of time. However, Brooks did not qualify for work-out assistance because he was unable to provide the necessary up-front payment. (Exh. 1, p. "CHL/Brooks" 50-54.)

8. In October 2004, Brooks or his attorney informed Countrywide's outside foreclosure counsel that some of the properties had or may have suffered damage in Hurricane Ivan in September 2004. Countrywide agreed to postpone the sale and conducted property inspections. The property inspections revealed minimal hurricane damage, but also revealed low property values for the collateral properties which were below the outstanding principal balances of the two defaulted mortgages. (Exh. 1, p. "CHL/Brooks" 43-48.)

9. The sale was rescheduled by outside foreclosure counsel for November 10, 2004, and the Second Mortgage was foreclosed by outside counsel on behalf of Countrywide and LPP on that date. At the time of the foreclosure sale, the Second Mortgage had an outstanding total debt balance of **$11,376.06**, including: (i) unpaid principal of $9287.00, (ii) accrued interest of $1894.56; (iii) an escrow balance of $57.00; and (iii) fees (not including legal fees) of $137.50. (Exhibit 5.) After the foreclosure sale bid amount of $6,750 was applied to the Second Mortgage balance, Brooks owed a remaining deficiency on the Second Mortgage of **$4,626.06** (subject to accrual of additional interest).

10. Between the time that Countrywide began servicing the First and Second Mortgages and the date of the foreclosure sale on November 10, 2004, Countrywide never received a mortgage payment from Mr. Brooks on either mortgage. (Exh. 1, p. "CHL/Brooks" 3; Exh. 2, p. "CHL/Brooks" 79.)

11. At no time between November 2003 and November 2004 did Brooks provide evidence to Countrywide that he had in place any policy of hazard insurance covering the collateral properties, as required by the mortgages. In 2004, Countrywide notified Brooks of the apparent absence of insurance covering the collateral properties by letter on several occasions and requested that Brooks provide Countrywide with evidence of insurance. True and correct copies of Countrywide's letters to Mr. Brooks regarding the need for insurance are attached hereto as Exhibit 6. In or around August 2004, when Mr. Brooks failed to provide proof of insurance in accordance with the requirements of the two mortgages, Countrywide obtained lender placed insurance coverage insuring the mortgagee's interest in the properties. Countrywide notified Mr. Brooks by letter that the lender placed coverage had been obtained. (Exh. 1, p. "CHL/Brooks" 56-58; Exh. 2, p. "CHL/Brooks" 100-101.)

12. In September 2004, Countrywide provided Mr. Brooks with contact information to file claims for loss damage to the properties with the insurance carrier through which Countrywide had obtained lender-placed insurance coverage. (Exh. 1, p. "CHL/Brooks" 57.)

13. Or around January 18, 2005, Countrywide received two insurance claim payments from the insurer, Newport Insurance Company, for the collateral properties in the amount of $2,459.85 (120 Hubbard Street) and $735.44 (415 Ice Street), for a combined total of $3,195.29. (Exh. 1, p. "CHL/Brooks" 4; Exh. 2, p. "CHL/Brooks" 80.) These amounts were forwarded by Countrywide to LPP.

14. In early March 2005, almost four months after the foreclosure, Brooks contacted Countrywide regarding the status of his loans and requested a loan payment history for his Second Mortgage. Countrywide mailed the plaintiff a loan payment history for the Second

I declare under penalty or perjury that the foregoing is true and correct. Executed on this 14th day of March, 2007.

*Mily Cedillo-Galindo, Team Leader Case Mgmt group.*
[name/title]