**A.**

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

OMB NO. 2502-0265

**B. TYPE OF LOAN:**

| | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. |
| 4. ☑ VA | 5. ☐ CONV. INS. | |

6. FILE NUMBER: 05-1829ANRS
7. LOAN NUMBER:
8. MORTGAGE INS CASE NUMBER:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0  3/98   (05-1829ANRS.PFD/05-1829ANRS/38)

**D. NAME AND ADDRESS OF BUYER:**

Sylvia Davis
208 Diana Street
Troy, AL 36081

**E. NAME AND ADDRESS OF SELLER:**

LPP Mortgage, LTD
c/o Legacy Drive
Plano, TX 75024

**F. NAME AND ADDRESS OF LENDER:**

**G. PROPERTY LOCATION:**
120 Hubbard Street,
415 Ice Street,
410 Hubbard Street
Troy, AL 36081
Pike County, Alabama

**H. SETTLEMENT AGENT:**
Title2Land, LLC
72-428779

PLACE OF SETTLEMENT
11851 Wentling Ave
Baton Rouge, LA 70816

**I. SETTLEMENT DATE:**
July 14, 2006

| J. SUMMARY OF BUYER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BUYER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 7,500.00 | 401. Contract Sales Price | 7,500.00 |
| 102. Personal Property | 97.50 | 402. Personal Property | |
| 103. Settlement Charges to Buyer (Line 1400) | | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. CountyTaxes Lot3&4 | to | 406. CountyTaxes Lot3&4 | to |
| 107. County Taxes Lot 6 | to | 407. County Taxes Lot 6 | to |
| 108. Assessments | to | 408. Assessments | to |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BUYER** | 7,597.50 | **420. GROSS AMOUNT DUE TO SELLER** | 7,500.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BUYER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | | 502. Settlement Charges to Seller (Line 1400) | 3,992.50 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff First Mortgage | |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. CountyTaxes Lot3&4 | to | 510. CountyTaxes Lot3&4 | to |
| 211. County Taxes Lot 6  10/01/05 to 07/14/06 | 37.45 | 510. CountyTaxes Lot3&4 | 37.45 |
| 212. Assessments | 52.11 | 511. County Taxes Lot 6  10/01/05 to 07/14/06 | 52.11 |
| 213. | | 512. Assessments | |
| 214. | | 513. | |
| 215. | | 514. | |
| 216. | | 515. | |
| 217. | | 516. | |
| 218. | | 517. | |
| 219. | | 518. | |
| | | 519. | |
| **220. TOTAL PAID BY/FOR BUYER** | 89.56 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 4,082.06 |
| **300. CASH AT SETTLEMENT FROM/TO BUYER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Buyer (Line 120) | 7,597.50 | 601. Gross Amount Due To Seller (Line 420) | 7,500.00 |
| 302. Less Amount Paid By/For Buyer (Line 220) | ( 89.56) | 602. Less Reductions Due Seller (Line 520) | 4,082.06 |
| 303. CASH ( X FROM ) ( TO ) BUYER | 7,507.94 | 603. CASH ( X TO ) ( FROM ) SELLER | 3,417.94 |

**EXHIBIT A**
(Everheart Affidavit)

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BUYERS FUNDS AT SETTLEMENT | PAID FROM SELLERS FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $ @ % 1,500.00 | | | |
| *Division of Commission (line 700) as Follows:* | | | |
| 701. $ 750.00 to Green Realty | | | |
| 702. $ 750.00 to Green Realty | | | |
| 703. Commission Paid at Settlement | | | 1,500.00 |
| 704. Referral Fee to REO National (Attn: Michael Shepherd) | | | 500.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee 1.0000 % to | | | |
| 802. Loan Discount % to | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mortgage Ins. App. Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From to @ $ /day ( days ) | | | |
| 902. MIP Tolins. for Life Of Loan for months to | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. County Taxes Lot3&4 months @ $ per month | | | |
| 1004. County Taxes Lot 6 months @ $ per month | | | |
| 1005. Assessments months @ $ per month | | | |
| 1006. months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. months @ $ per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee to Title2Land, LLC 3 Properties | | | 300.00 |
| 1102. Abstract or Title Search to Title2Land, LLC 3 Properties | | | 600.00 |
| 1103. Title Examination to Title2Land, LLC 3 Properties | | | 675.00 |
| 1104. Title Update/Buyer Check to Title2Land, LLC 3 Properties | | | 100.00 |
| 1105. Document Preparation to Title2Land, LLC | | 50.00 | 100.00 |
| 1106. Notary Fees to Thad Yancey, Attorney $POC | | | |
| 1107. Attorney's Fees to | | | |
| *(includes above item numbers: )* | | | |
| 1108. Title Insurance to First American Title Insurance Company | | 75.00 | |
| *(includes above item numbers:with Title2Land,LLC acting as Agent )* | | | |
| 1109. Lender's Coverage $ | | | |
| 1110. Owner's Coverage $ 7,500.00 75.00 | | | |
| 1111. Trans/Cour/Wire to Title2Land, LLC | | 30.00 | 50.00 |
| 1112. Tax Cert to Advaloren Tax Research | | | 75.00 |
| 1113. Recording Services to Title2Land, LLC 3 Properties | | 17.50 | 17.50 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ;Mortgage $ ;Releases $ | | | |
| 1202. City/County Tax/Stamps: Deed ;Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps ;Mortgage | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 97.50 | 3,992.50 |

Certified to be a true copy.

(05-1829ANRS / 05-1829ANRS / 38 )

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

**Buyer:** Sylvia Davis
**Seller:** LPP Mortgage, LTD
**Settlement Agent:** Title2Land, LLC
(225)295-3152
**Place of Settlement:** 11851 Wentling Ave
Baton Rouge, LA 70816
**Settlement Date:** July 14, 2006
**Property Location:** 120 Hubbard Street,
415 Ice Street,
410 Hubbard Street
Troy, AL 36081
Pike County, Alabama

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Sylvia Davis

LPP Mortgage, LTD

BY: _____    7-11-06
Kent Twitchell
its Authorized Signatory

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(05-18294NRS.PFD/05-18294NRS/38)

# First American Title Insurance Company

## SELLER'S/OWNER'S AFFIDAVIT AND INDEMNITY

STATE OF **ALABAMA**
COUNTY OF **PIKE**

I/We have owned the property now being sold or mortgaged by me continuously for _____ years, and my enjoyment thereof has been peaceable and undisturbed and the title to said property has never been disputed to my knowledge, nor do I know of any facts by reason of which the title to, or possession of, said property might be disputed or by reason of which any claim to any of said property might be asserted adversely to me, and more particularly:

1. No party other than the Seller(s)/Owner(s) is in possession of all or any portion of the premises above described under any unrecorded leases, tenancy at will or otherwise.

2. The Seller(s)/Owner(s) during the time of ownership of the premises above described has/have conveyed no portion of the premises nor done any act or allowed any act to be done which has changed or could change the boundaries of the premises

3. The Seller(s)/Owner(s) has/have allowed no encroachments on the premises above described by any adjoining land owners nor has/have the undersigned encroached upon any property of adjoining land owners.

4. The Seller(s)/Owner(s) has/have allowed no easements, rights of way, continuous driveway usage, drain, sewer, water, gas or oil pipeline or other rights of passage to others over the premises above described and has/have no knowledge of such adverse rights.

5. The Seller(s)/Owner(s), at present, and for a period of _____ days past, has/have caused no construction, erection, alteration or repairs of any structures or improvements on the premises above cited to be done, nor has/have contracted for any material to be delivered to the premises for which charges therefor remain unpaid.

6. The Seller(s)/Owner(s) has/have no knowledge of any highways, abandoned roads, lanes, cemetery or family burial grounds, springs, streams, rivers, ponds, or lakes bordering or running through said premises.

7. The undersigned has no knowledge of any due taxes or special assessments.

8. The undersigned has not allowed and knows of no violation of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the premises.

9. That there are no pending suits, proceedings, judgments, bankruptcies, liens or executions against said owner, either in the aforesaid county or any other county in the aforesaid state.

This affidavit is given to induce FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, to issue its title insurance policy or policies without exception to claims of materialmen's and laborers' liens, survey matters, special assessments and rights of parties in possession, and as an inducement therefor, said affiant agrees to indemnify and hold FIRST AMERICAN TITLE INSURANCE COMPANY harmless of and from,any and all loss, cost, damage and expense of every kind, including Attorney's fees, which said FIRST AMERICAN TITLE INSURANCE COMPANY shall or may suffer or incur or become liable for under its said policy or policies now to be issued, or any reissue, renewal or extension thereof, directly or indirectly, as a result of any misrepresentation herewith.

"To the best of the seller's knowledge the foregoing/ following statements are true and correct."

July 14, 2006

LPP MORTGAGE, LTD

BY: _____

7-11-06

**Kent Twitchell**
**Its Authorized Signatory**

_____
Notary Public

My Commission Expires: **05/13/08**

JENNIFER CAROL MOORE
Notary Public, State of Texas
My Commission Expires
May 13, 2008

# CLOSING AGREEMENT

BE IT KNOWN THIS 14th day of July, 2006, the following parties:

PARTY 1: Sylvia Davis                    PARTY 1: LPP Mortgage, LTD
PARTY 2:                                 PARTY 2:
PARTY 3:                                 PARTY 3:
PARTY 4:                                 PARTY 4:

**TAX PRORATION**
We understand the Proration of taxes stated in the settlement statement was based on the best information available at this time from the public records and is considered final for the purposes of our dealings with the closing Notary and Title21and, LLC.

_____ (check this box, if applicable)
The Seller/ Owner has/have represented to Title21and, LLC and other parties to the transaction herein and unnamed that the property taxes now due and payable on the property: 120 Hubbard Street, Troy, AL, 36081, has/have been paid by their lender's escrow department. Said payment may not be verified or posted with the tax collectors office at the time of closing, or for a longer period thereafter. In lieu of holding said amount in our escrow account until written, official and verified proof of payment is received, Title21and, LLC and the other party to this transaction have agreed to release funds to the seller, who in turn agrees to pay on demand the amount due for these taxes.

Should any action be taken by the taxing authorities subsequent to this date which results in gross variation in the final tax billings and would have a retroactive effect on this transaction indicating that financial adjustment between us to be in order, we agree to further prorate said taxes and to adjust the proration made today. It is understood and agreed that any such adjustment in the proration of taxes at a subsequent date will be settled between ourselves. Said adjustments shall not involve the closing Notary, any persons in the office of the Notary, or Title21and, LLC.

**PURCHASE AGREEMENT/CASH SALE**
All parties hereby certify that all conditions, agreements and obligations pursuant to the sale and purchase agreement have been completed to my satisfaction. I have carefully examined the cash sale, particularly my name, warranties and the property description and accept the same as accurate and complete. It is understood and agreed that any such adjustments at a subsequent date will be settled between ourselves. An Attorney closing your transaction does not represent you legally. Consult with other competent legal counsel if you have questions or concerns regarding your rights before signing any documents. Former representation ceases for this transaction.

**RECORDING AND COURIER COSTS**
The costs to Title21and, LLC from the Clerk of Court, overnight courier services and abstract/tax information services vary from one closing to the next, depending on the county/parish, the number of pages, the particular courier service and many other factors. The fees stated on the closing statement for recording services, overnight courier an abstract/tax information services include an estimate of the actual costs from the third party provider of these services, we will be responsible for any underestimation of such costs.

**PAYOFFS of mortgages, judgments and liens** are paid by this office for title cancellation. Should any payoff quote or deduction be short or insufficient, such shortage is your responsibility to pay immediately upon demand or can be further deducted from any monies due you, which includes but not limited to your proceeds from sale. The undersigned hereby consent and agree that in event there are any shortfalls in any amounts payable to entities that are being paid in the course of this transaction, and that entity requests additional funds, then the undersigned consent as follows:

1. The undersigned will immediately and fully pay to the entity all funds necessary to pay the amount in full. If the undersigned fails to pay said sums within seven business days, the undersigned will be liable for liquidated damages on an amount equal to the shortfall.

2. This obligation shall be a continuing obligation and may apply to one or more lenders.

3. In the event that this document must be enforced, the undersigned agrees to reimburse and hold harmless the lender from whom the undersigned made this date is receiving funds, from any and all costs of enforcement of this agreement including reasonable attorneys fees and cost of enforcement.

Other disbursement checks for non-title cancellation debts imposed by the lender will be disbursed as stated on the HUD-1 and for that exact amount. Any checks issued after initial disbursement will be done so after presentation of the original check only and a $5.00 charge per check will be deducted and assessed. Any lost/stolen checks will be reissued after the appropriate waiting period has passed and will likewise be assessed a fee and additional stop payment charge of $25.00.

Parties each agree to indemnify, hold harmless and reimburse or otherwise compensate Title21and, LLC for any reasonable attorney's fees, costs, or litigation expense incurred by Title21and, LLC in connection with any suit or claim concerning the performance of Title21and, LLC's duties under this contract. By signing below, the parties consent to the jurisdiction of the 19th Judicial District Court of Louisiana to resolve and dispute or judicial determination. Parties have read the above conditions and agree to all the provisions herein. There are no verbal agreements the contrary.

**Correction Agreement - Limited Power of Attorney**
The undersigned borrower(s), for and in consideration of the approval, closing and funding of their mortgage loan, hereby grant Title21and an settlement agent limited power of attorney to correct and/or execute or initial all typographical or clerical errors discovered in any or all of the closing documentation required to be executed by the undersigned as settlement. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.

THIS LIMITED POWER OF ATTORNEY MAY NOT BE USED TO INCREASE THE INTEREST RATE THE UNDERSIGNED IS PAYING, INCREASE THE TERM OF THE UNDERSIGNED'S LOAN, INCREASE THE UNDERSIGNED'S OUTSTANDING PRINCIPAL BALANCE OR INCREASE THE UNDERSIGNED'S MONTHLY PRINCIPAL AND INTEREST PAYMENTS. Any of theses specified damages must be executed directly by the undersigned.

This limited power of attorney shall automatically terminate 120 days from the closing date of the undersigned's mortgage loan.

IN WITNESS WHEREOF, the undersigned have executed this Limited Power of Attorney as of the date and year signed above:

PARTY 1: Sylvia Davis                    PARTY 1: LPP Mortgage, LTD

                                         7-14-06

PARTY 2:                                 PARTY 2: _____
                                         Kent Twitchell
                                         Its Authorized Signatory

PARTY 3:                                 PARTY 3: _____

PARTY 4:                                 PARTY 4: _____

# GREEN REALTY

124 South Main Street
Shawblake, Alabama 36010
(334) 735-5556
(334) 735-5351 (fax)

## REAL ESTATE SALES AGREEMENT

The undersigned PURCHASER(S), **SYLVIA DAVIS** hereby agrees to purchase, and the undersigned **SELLER(S)**, **OWNER OF RECORD** hereby agrees to sell the following described real estate situate in the City of **TROY** County of **PIKE**, Alabama, located at **410 HUBBARD** **410 HUBBARD AVENUE**, Legal Desc., pool, heater(s), plumbing and plumbing fixtures, sink and ceiling fans(s), blinds, shades, hot water located on property.

PURCHASE PRICE .................................................................................. $2,500.00

EARNEST MONEY- Receipt of which is hereby acknowledged .......................... $

THIS AGREEMENT is subject to PURCHASER being able to **CASH SALE**

Loan in the amount of ........................................................................... $

CASH DUE at closing (does not include closing cost NOR PREPAIDS) ................. $

SETTLEMENT COSTS:
Deed___ Survey ___ if required, Appraisal ___ Attorney ___ Discount points ___ Prepaids ___ Termite Letter ___ if
required ___ Recording Fees ___ Transfer Fees ___ Other ___ Taxes to be paid ___ Points **X** or Transferred
___ Title Insurance; Mortgage Policy ___ in connection with your mortgage loan, a mortgage title insurance is being issued by your mortgage lender. This policy will not afford you any protection in the event that a claim against the title to the real estate you are purchasing is made as a result of title defects such as forgeries of prior deeds, missing liens, tax liens, judgements and other. An owner's policy may be purchased.
OTHER: **TAXES TO BE PRORATED. SELLER TO PAY COMMISION, TITLE INSURANCE, DEED PREP & SELLER'S ATTORNEY FEES. PROPERTY IS A FORECLOSURE AND IS SOLD AS IS WHERE IS. SELLER TO PAY ANY ASSESSMENTS OR BACK TAXES ON PROPERTY.**

CLOSING DATE, on or before **07/13/2006.** DATE OF POSSESSION: at closing
CONDITION OF PROPERTY: Neither the SELLER nor any agent makes any representations nor warranties regarding the conditions of the property except to the extent expressly and specifically set forth herein. SELLER however makes no representations and specifically disclaims any warranties with regard to built-in appliances, if any, heating, cooling, plumbing, electrical systems, and roof. PURCHASER has the obligation to determine, either personally or through counsel of PURCHASER's choosing, any and all conditions of the property material to the PURCHASER'S decision to buy the property, including and without limitation, the condition of the heating, cooling, plumbing, electrical systems, built-in appliances, roof, basement, including leaks therein, the size and area of the property, construction materials, including floors, structural condition, utility and sewer or septic systems availability and condition; any matters affecting the character of the neighborhood.

SELLER, at the time of closing, agrees to execute and deliver a good and sufficient warranty deed conveying a good and merchantable title to PURCHASER, free and clear of all encumbrances. If SELLER fails to make the title merchantable within 60 days, the earnest money shall be returned to PURCHASER or at PURCHASER's option may waive the defects and elect to purchase. However, in said title is made merchantable and the PURCHASER refuses to exercise their terms of contract, then the earnest money will be forfeited to SELLER as liquidated damages. The forfeited earnest money shall be divided equally between the SELLER and the listing agent.

IRS requires form 1099 be filed by the party who actually prepares the HUD form or handles the distribution of the sales proceeds.

AGENCY DISCLOSURE: The Listing Agency **GREEN REALTY**, represents the **SELLER**, (unless otherwise stated), and the Selling Agency **GREEN REALTY** represents **XX SELLER** PURCHASER, or is acting as a ___ TRANSACTION BROKER. ___
SELLER's initials: ___ PURCHASER's initials: _SLS_

This contract contains the entire agreement of the parties hereto. TIME IS OF THE ESSENCE OF THIS CONTRACT. The SELLER and PURCHASER agree to exert full diligence to obtain a loan. In the event the rate of interest changes, PURCHASER agrees to close loan at prevailing rate

IN WITNESS WHEREOF and parties have hereunto set their hands, and seals this _____ day of **JUNE** 2006

PURCHASER: _Sylvia J Davis_ SS# 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 WITNESS: _Jennifer Sargent_
PURCHASER: _____ SS# _____ WITNESS: _____

SELLER: _____ 6-20-06 SS# _____ WITNESS: _____
SELLER: _____ SS# _____ WITNESS: _____
SELLING AGENT: _____ LISTING AGENT: _____

**Kent Twitchell**
**Its Authorized Signatory**

## REQUIRED "AS-IS, WHERE-IS" ADDENDUM
### TO ALL CONTRACTS FOR SALE AND PURCHASE

#### ADDENDUM A

1. **No Warranties by Seller and Buyer's Acknowledgement of Condition.** Buyer represents and warrants to Seller that: (i) Buyer is (or prior to the Closing, will be) specifically familiar with the Property, (ii) Buyer has (or prior to Closing, will have) inspected (unless those rights have been waived) and examined all aspects of the Property and its current condition that Buyer believes to be relevant to Buyer's decision to purchase the Property, and (iii) Buyer is (or will be, as of the date of this Agreement, or as of the end of the Inspection Period (as defined below)) satisfied as to all items relating to or the condition of the Property. Buyer acknowledges and agrees that Seller has not made any warranty or representation, express or implied, written or oral, concerning the Property or any item to which the Property may or may not be put including, but not limited to, the following:

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BUYER IS ACQUIRING THE PROPERTY THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY "AS IS" "WHERE IS" WITH ALL FAULTS AND DEFECTS, AND BUYER ACKNOWLEDGES AND AGREES REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, OR THE PRESENCE OR ABSENCE OF ANY POLLUTANT, HAZARDOUS WASTE, AS A SUBSTANCE OR SOLID WASTE ON OR ABOUT THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY INTEND TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY OR BODY HAVING JURISDICTION, INCLUDING, WITHOUT LIMITATION ITS COMPLIANCE WITH APPLICABLE ENVIRONMENTAL LAWS, (E) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY OR (F) ANY OTHER MATTER RELATED TO OR CONCERNING THE PROPERTY EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT AND BUYER SHALL NOT SEEK RECOURSE AGAINST SELLER ON ACCOUNT OF ANY LOSS, COST OR EXPENSE SUFFERED OR INCURRED BY BUYER WITH REGARD TO ANY OF THE MATTERS DESCRIBED IN CLAUSES (A) THROUGH (F) ABOVE. SELLER SHALL HAVE NO OBLIGATION WHATSOEVER TO UNDERTAKE ANY REPAIRS, ALTERATIONS OR OTHER WORK OF ANY KIND WITH RESPECT TO ANY PORTION OF THE PROPERTY. BUYER ACKNOWLEDGES THAT BUYER, HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND CONDITION OF THE TITLE TO THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER. BUYER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY SELLER CONCERNING THE PROPERTY, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, AND BUYER AGREES BY THE FURTHER THAT BUYER SHALL VERIFY THE ACCURACY AND COMPLETENESS OF SUCH INFORMATION.

2. **Buyer's Inspection Period.** Buyer or Buyer's representative shall have ten (10) days from date of this Contract for Sale and Purchase ("Inspection Period") to satisfy itself in the sole discretion as to items set forth in Paragraph 1 of this Addendum and to enter the Property, during reasonable business hours after giving reasonable notice to Seller or Seller's representative, for the purpose of making such physical inspections as may be desired by Buyer (collectively the "Property's Condition"). During Buyer's Inspection Period, Buyer may but is not obligated to, at its expense, conduct and cause to be conducted Phase I or II environmental assessment of the Property. If Buyer elects to proceed with the closing with or without a Phase I or II environmental assessment, it shall be conclusively assumed prior to and permanently after the Closing that the environmental condition of the Property is acceptable to the Buyer. If Buyer accepts the Property with or without an environmental assessment, and all environmental condition exists, Buyer waives and releases Seller from any future claim it may have against Seller for damages caused by such condition, and agrees to protect, indemnify, defend and hold Seller harmless from any and all costs, expense, loss and liability (including attorney's fees in connection therewith) arising from the existence of such condition and Buyer further agrees to execute such further documentation incorporating such waiver, release, and indemnification as requested by Seller. The foregoing waiver and indemnity shall survive the Closing. Buyer shall have the absolute right to terminate this Agreement at any time prior to 5:00 P.M. ten (10) days after the execution of this Agreement by giving Seller and Agent written notice of termination of this Agreement whereupon the Agent will return the Deposit to the Buyer and the parties shall have no further rights hereunder; save and except any indemnification provisions contained herein shall survive the termination of this Agreement. In the event Buyer fails to terminate this agreement by 5:00 P.M. ten (10) days after the execution of this Agreement, then in such event Buyer shall have waived all objection to the Property's condition as well as all contingencies to Closing with respect to the Property's condition and the Property's condition shall be deemed approved by Buyer and Buyer shall have no further rights to terminate this Agreement pursuant to his paragraph of this Addendum. Seller is under no obligation to repair, renovate or restore any physical condition on the Property which may be disapproved by Buyer. Buyer shall bear the cost of any inspection or studies undertaken pursuant to this Addendum. Buyer shall protect, indemnify, defend and hold Seller free and harmless from all costs, claims or liabilities (including attorney's fees in connection therewith) arising with respect to such physical inspection or study, which indemnity shall survive the Closing.

3. **Seller's Default.** IF SELLER FAILS TO COMPLETE THE TRANSACTION CONTAINED IN THIS AGREEMENT FOR ANY REASON DUE TO SELLER'S DEFAULT, THE PARTIES, AFTER NEGOTIATION HAVE AGREED THAT BUYER, AT ITS OPTION, MAY EITHER (1) SUE SELLER FOR SPECIFIC PERFORMANCE AS BUYER'S SOLE AND EXCLUSIVE REMEDY, BUYER EXPRESSLY WAIVING ALL OTHER DAMAGES OR REMEDIES AT LAW OR IN EQUITY OR (2) BUYER MAY ELECT TO RECEIVE THE DEPOSIT HEREUNDER. IN THE EVENT BUYER SHALL HAVE NO FURTHER OBLIGATION TO BUYER AND BUYER WAIVES ALL OTHER REMEDIES AVAILABLE AT LAW OR IN EQUITY. IN LIEU OF SPECIFIC PERFORMANCE, IN WHICH EVENT SELLER SHALL ELECT TO SEEK SPECIFIC PERFORMANCE BY FILING SUIT WITHIN 30 DAYS FROM DATE OF SELLER'S DEFAULT, OTHERWISE BUYER SHALL BE DEEMED TO HAVE WAIVED THE RIGHT OF SPECIFIC PERFORMANCE AND ELECTED A RETURN OF DEPOSIT AS FULL AND COMPLETE RELEASE OF ANY AND ALL CLAIMS AND THEREAFTER THE PARTIES WILL HAVE NO FURTHER RIGHTS HEREUNDER EXCEPT FOR THE INDEMNIFICATION OBLIGATION WHICH SURVIVE CLOSING OR TERMINATION OF THIS AGREEMENT. IN THE EVENT THE BUYER PREVAILS IN A SUIT FOR SPECIFIC PERFORMANCE BUT SELLER IS UNABLE TO CONVEY TITLE WITHOUT INCURRING MORE THAN $1,000.00 IN COST AND EXPENSES, BUYER SHALL HAVE THE RIGHT TO SUE SELLER FOR DAMAGES IN AN AMOUNT UP TO THE AMOUNT OF THE DEPOSIT (INCLUSIVE OF ATTORNEY'S FEES AND COURT COSTS) AND WILL ALSO BE ENTITLED TO RETURN OF DEPOSIT AS A FULL, COMPLETE, LIQUIDATED DAMAGES. THE PARTIES HERETO HAVING CONCLUDED THAT A PRECISE MEASURE OF DAMAGES FOR FAILURE OF SELLER TO SPECIFICALLY PERFORM HEREUNDER WILL BE DIFFICULT TO CALCULATE AND DETERMINE, HOWEVER, THE PARTIES ACKNOWLEDGE AND AGREE THAT THE MAXIMUM AMOUNT OF BUYER'S DAMAGES WOULD NEVER EXCEED AN AMOUNT EQUAL TO ... AND THAT THE ... CANNOT BE ASCERTAINED WITH REASONABLE CERTAINTY ON THE EFFECTIVE DATE OF THIS AGREEMENT AND THAT AN AMOUNT EQUAL TO THE DEPOSIT MOST CLOSELY APPROXIMATES THE MAXIMUM AMOUNT NECESSARY TO COMPENSATE BUYER IN THE EVENT OF SUCH DEFAULT. BUYER AND SELLER AGREE THAT THIS IS A BONA FIDE LIQUIDATED DAMAGES PROVISION AND NOT A PENALTY OR FORFEITURE PROVISION. BUYER SHALL BE ENTITLED TO RECEIVE UP TO A MAXIMUM OF THE DEPOSIT AS LIQUIDATED DAMAGES ONLY UPON PROOF PRESENTED IN COURT OF BUYER'S DAMAGES, IN LIEU OF ALL OTHER DAMAGES AND RIGHTS, WHICH MAXIMUM AMOUNT OF THE PARTIES AGREE IS THE MAXIMUM REASONABLE SUM OF DAMAGES CONSIDERING ALL OF THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS AGREEMENT, INCLUDING THE RELATIONSHIP OF THE SUM TO THE RANGE OF HARM TO BUYER THAT REASONABLY COULD BE ANTICIPATED. EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENT MADE ABOVE AND THE FACT THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION AT THE TIME THIS AGREEMENT WAS MADE. BUYER AND SELLER AGREE THAT THIS IS A BONA FIDE LIQUIDATED DAMAGES PROVISION AND NOT A PENALTY OR FORFEITURE PROVISION. BUYER EXPRESSLY WAIVES ALL OTHER RIGHTS, DAMAGES AND REMEDIES IN LAW AND IN EQUITY.

4. **Conveyance of Title.** Seller will convey title by Special or Limited Warranty Deed. Seller shall have 45 days from notification date to cure title objections of buyer or any third party lender, and the closing date will be extended as necessary. If objections are not cured within such 45-day period, either party may terminate this contract upon written notice to the other party. In the event of such termination, neither party will have any further obligations with respect to this contract, and the earnest money will be refunded to buyer unless buyer waives the objection.

**IMPORTANT: READ BEFORE SIGNING.** THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS INSTRUMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT OR ADDENDUM.

DATED: _____

BUYER: _[signature]_

SELLER: _[signature]_
Kent Twitchell
Its Authorized Signatory

**This Document Prepared By:**
Allison Bourke
11851 Wentling Ave., Suite A
Baton Rouge, Louisiana 70816

**Return to:**
Title2Land, LLC
11851 Wentling Ave., Suite A
Baton Rouge, Louisiana 70816

## SPECIAL WARRANTY DEED

**THIS INDENTURE**, made this _____ of _____, 2006 between LPP Mortgage, LTD as grantor(s) pursuant to that grant of authority a copy attached hereto and made a part hereof, whose address is c/o Legacy Drive, Plano, TX 75024 to **Sylvia Davis**, a _____, as grantee, whose address is 208 Diana Street, Troy, AL 36081.

**WITNESSETH**: that the grantors, for in consideration of the sum of **SEVEN THOUSAND FIVE HUNDRED AND 00/100 ($7,500.00)** and other valuable considerations to said grantors in hand paid by said grantees, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the grantee and grantees heirs forever the following described land located in the County of Pike, State of Alabama, to-wit:

The following described real property situated in the County of Pike, State of Alabama, to-wit:

**PARCEL 1:**
One house and lot in the City of Troy, Pike County, Alabama, being more particularly described as follows: Beginning at the Southwest corner of Lot No. 6, Plat No. 3 of the Henderson Lands in Oakland Heights, as recorded in the Office of the Judge of Probate of Pike County, Alabama, Plat Book One, Page Sixty-Four, running thence Northward along the West line of said Lot and extension of same 245 feet, thence East 60 feet, thence Southward to the Southeast corner of said Lot No. Six 250 feet, thence Westward along the South line of said Lot Six to the point of beginning.
Municipal Address: 120 Hubbard Street, Troy, AL 36081 and 415 Ice Street, Troy, AL 36081
Tax ID No.:  55-10-09-29-4-001-012.000

**PARCEL 2:**
Lot #3 and 4, according to the plat of Henderson Lake Subdivision #2, as recorded in the Office of the Judge of Probate of Pike County, Alabama, in Plat Book 2, page 96.
Municipal Address: 410 Hubbard Street, Troy, AL 36081
Tax ID No.: 55-10-08-28-3-002-005.000

**Send Tax Bill To:** Sylvia Davis, 208 Diana Street, Troy, AL 36081.

**SUBJECT** to easements, restrictions and reservations of record, if any, and taxes for 2006 and subsequent years.

**SUBJECT** to any and all Statutory rights of redemption in favor of mortgagors and other persons or parties granted such rights under the laws of the State of Alabama and the United States of America arising out of foreclosure sale of that certain mortgage filed for record in said Probate Office Book 413 Page 72; said mortgage Foreclosure Deed dated _____ and filed for record in said Probate Office in _____

The Warranties passing to grantee hereunder are limited solely to those matters arising from acts of the grantor, its agents or representatives, occurring solely during the period of grantors ownership of the subject real estate.

Singular and plural are interchangeable, as context requires.

**IN WITNESS WHEREOF**, Grantor has hereunto set grantors hand and seal the day and year first above written.

LPP Mortgage, LTD

BY: _____

**Authorized Agent:**

Source of Title: _____

STATE OF _____Texas_____

COUNTY OF _____Collin_____

Before me, the undersigned, A Notary Public in and for said State at Large, hereby certify that _____Kent Mitchell_____, whose name as Authorized Agent for **LPP Mortgage, LTD**, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, she/he, as such Authorized Agent with full authority executed the same voluntarily for and as the act of said corporation.

Given under my hand this _11th_ of _July_, 2006.

_____

**Notary Public**

My commission expires: _05/13/08_

JENNIFER CAROL MOORE
Notary Public, State of Texas
My Commission Expires
May 13, 2008