IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROY BROOKS, JR., | * | |
| Plaintiff, | * | |
| VS. | * | CASE NO. 2:06CV356-MHT |
| COUNTRYWIDE HOME LOANS, INC., et al., | * | |
| Defendant. | * | |

### *RESPONSE IN OPPOSITION*
### *TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

COMES NOW Plaintiff, Roy Brooks, Jr., by undersigned counsel, J. E. Sawyer, Jr., pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully moves this Court to deny Defendant's motion for summary judgment in that there is a genuine dispute as to material facts and the Defendant/movant is **not** entitled to judgment in its favor as a matter of law. Plaintiff Brooks responds as follows:

**I.    SUMMARY JUDGMENT STANDARD**

   **A.    General Standards**

The basic issue before the court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission of the case to a jury or whether it is so one-sided that one party, the movant, must prevail as a matter of law. The moving party has the burden of showing the absence of a genuine issue as to any material facts, and in deciding whether the movant has met this burden. The court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. If

reasonable minds could differ on the inferences arising form undisputed facts, then a court should deny summary judgment.

> Once the movant…satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to come forward with specific facts showing that there is a genuine issue for trial. Otherwise stated, the nonmovant must demonstrate that there is indeed a material issue of fact that precludes summary judgment. A mere scintilla of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Where the record taken as a whole could not lead a rational Trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 656 (11th Cir. 1997)(internal citations omitted).

Rule 56 provides that summary judgment is to be granted only if "the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The procedure a district court in the Eleventh Circuit must follow in deciding motions for summary judgment is set out in *Clark v. Coats & Clark*, 929 F2d 604 (11th Cir. 1991):

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed an issue of material fact that precludes summary judgment.

*Id.* at 608.

"As the moving party, [the defendant] has the burden of showing the absence of a genuine issue of material fact, and for these purposes the material it lodged must by viewed in

the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The district court cannot weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Hairston*, 9 F.3d at 919 (quoting *Anderson*, 477 U.S. at 255). In order to make clear that the non-moving party has no duty to present evidence showing a disputed issue of fact unless and until the moving party has met its initial burden, the *Coats & Clark* court analyzed *Adickes* as holding the following:

> To summarize, the *Adickes* rule remains the general rule. The moving party bears the initial burden to show the district court, by reference to materials on file; that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party being the burden proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet is burden at trial.

*Coats & Clark*, 929 F.2d at 608.

If the moving party carries this burden and shows that lack of a material question of fact and its entitlement to judgment as a matter of law, then –and only then—the party opposing the motion must show the existence of a genuine issue of material fact. *Hairston*, 9 F.3d at 918 (citing *Matsushita*, 475 U.S. at 586-87; *Coats & Clark*, 929 F.2d at 608).

## II.  NARRATIVE VERIFIED STATEMENT OF UNDISPUTED FACTS

### A.  Background Information

Roy Brooks, Jr. had two (2) mortgages (that were assigned to and assumed by Countrywide Home Loans) that are made the basis of his lawsuit against Defendant Countrywide. These mortgages originally were to IAM Federal Credit Union and Small Business Administration (SBA). Brooks asserts he made timely payments until his employment ceased with the closing of the plant that he had worked at for approximately thirty (30) years followed by ill-health complications that required his hospitalization. Brooks admits he then became late on his mortgage payments. The mortgage problem(s) situation with Countrywide was further complicated by storm damage to the mortgaged property from Hurricane Ivan one month later. The property, Brooks asserts, was deemed a total loss by an adjustor for Countrywide's forced place insurance company (the first adjustor).

To any extent, Brooks initially contacted IAM Federal Credit Union to straighten out his payments. This is when Brooks first learned that Countrywide had purchased and assumed said mortgage from the credit union. SBA had earlier sold or assigned same for value to Countrywide. After several phone calls with various representatives, Brooks was finally put in touch with the "workout" department of Countrywide. The intention of this program was to help customers catch up their payments and avoid foreclosure. Brooks intended to retain his property and <u>doggedly</u> communicated with Countrywide on his payments.

After a series of missteps with Countrywide on the "workout" procedure and the confusion over the amount and the application of insurance funds to the mortgages, Countrywide foreclosed on Brooks' property on November 30, 2005.

### III.   ARGUMENT

<u>The sums owed on the two (2) Countrywide mortgages and insurance proceeds.</u>

      1.     Defendant Countrywide makes much ado in their argument to this Court that Plaintiff Brooks did not made a payment on the first or second mortgaged owed to Countrywide while they serviced the loan(s). However, Countrywide neglects to inform the Court that in their own documents there are papers that indicate that after the storm, Brooks' mortgage was paid in full from the insurance proceeds or at least according to Countrywide documents. See Exhibit A. Additionally, Countrywide complains that the insurance on Brooks was <u>forced</u> <u>placed</u> insurance which protected Countrywide's mortgage and that Brooks had no interest in said proceeds except as pertained to the mortgages… first and second… unless said damage amounts exceeded the amount(s) of the mortgage. Brooks was tasked single-handedly by Countrywide to deal with the insurance companies on the property damage since Countrywide could seemingly care less about any forthcoming funds that could probably pay off said mortgages, namely, Brooks had to: 1) contact the insurance companies himself 2) file claims with no assistance from Countrywide, and 3) meet with the adjustor(s), all of which he did in September 2004 including the actual meeting with the adjustors in October 2004. A refund check was sent to Brooks reflecting the forced placed insurance payout seemingly exceeded the mortgage amount. Brooks was sent the apparent overage from the insurance which he certainly could not have received if the principle amount(s) of the mortgage had not been paid in full. Additionally, it appears that the insurance company has <u>never</u> paid the damage claim for 410 Hubbard Street even though Brooks met with said adjustor and the adjustor indicated that the home was in excess of $25,000.00 damage, per Brooks. See Exhibit B.

Also see Exhibit C which indicates by Countrywide document that the mortgage(s) had been paid in full. For the benefit of the Court, it should be noted that Brooks has never owned or owed any money on a Dean Street property nor is there a Countrywide loan on said property. Certainly, these documents are confusing on the part of Countrywide. It is no wonder that Brooks was confused by these conflicting documents. The Dean Street property is, in fact, owned by Gloria Stark and has never had a Countrywide mortgage on it. See Exhibit D.

The foreclosure.

Also, Brooks indeed questions the validity of the foreclosure on his second mortgage as being improper. Namely, he contends that his then-attorney James Thomas of Troy had an agreement to postpone the foreclosure of his property as it had previously been done since August of 2004 in order to fully complete the insurance coverage questions and damage amounts on said property. The reason for the continuances requests by Brooks was to allow Brooks to receive the insurance proceeds on the forced placed insurance so as to pay-off the mortgages he owed to Countrywide. Obviously, this took longer than all the parties anticipated, but was in the late stages of being processed when the November 10, 2004 foreclosure date approached. Brooks contends that his lawyer had secured a continuance of the November 10, 2004 date, but just to ensure that Countrywide did not foreclose on the property he physically went to the Troy (Pike County) courthouse and made certain there was no foreclosure auction. He stayed there all day. There was no foreclosure auction on Brooks' property. He asserts that he has a witness (a guard) that will substantiate his contention. See Exhibit E. Brooks strongly disagrees with lawyer Coots' statement that the foreclosure was done as prescribed in the foreclosure notice. Brooks asserts that what said instrument in fact reflects was that the foreclosure deed was not even recorded until December 30, 2004. See Exhibit F. Brooks notes that lawyer Coots

indicates he is the lawyer for Brooks as the auctioneer yet Brooks had hired his law partner, Mike Jones, to represent him in the first mortgage dispute when it was with IAM Federal Credit Union (before IAM assigned said mortgage to Countrywide). See Exhibit G.

Again…no payments by Brooks to Countrywide.

Speaking again on the issue that Defendant continues to mix into this lawsuit – namely, the failure of Brooks to make any payments for a number of months, Brooks can only say that he completely followed Countywide administrative procedures when he was unable to make his monthly payment due to his plant closing after many years of employment (thirty years) and then having medical problems right after this closing. When contacted by Countrywide (who Brooks did not even know who was the current assignee as he (Brooks) had been exclusively dealing with Debra McRay at IAM Federal Credit Union), he was notified by Beth Rouse, attorney for Countrywide, that a program was in place whereby he could go to the "workout" department and salvage (keep) his property, get his credit repaired and get back on track with his mortgage payments. This workout was the "real" reason that the property was not foreclosed on in August 2004. During the workout phase with Countrywide, Hurricane Ivan hit Pike County. Brooks then decided along with the concurrence of Countrywide that cashing in on the insurance to completely payoff the first and second mortgages would be the best route for him (and Countrywide) especially since the three (3) properties were total losses according to the insurance adjustor. See Exhibit H. Another factor that must be considered is that while Brooks took steps to keep Countrywide informed of the progress of the insurance proceeds progress, Countrywide consistently never seem to have the right address for Brooks. See Exhibits I, J and K. Brooks consistently remained in the dark as to Countrywide's intentions.

<u>410 Hubbard Street.</u>

Brooks can only say to this Court that the insurance adjustment of the 410 Hubbard Street mortgaged property by the adjustors for the forced placed insurance is but a classic example of how Countrywide acted toward its customer Roy Brooks Jr. Although Brooks had to seek out the adjustors to look at his property with no help from Countrywide and although Brooks showed 410 Hubbard Street to the adjustor no money has ever been forthcoming for damages to pay on Brooks' mortgage. It appears almost to be, as Brooks contends that Countrywide did not care if Brooks was going to lose or keep his property and continued to place only obstacles in its customer's path. They set him up to fail. Countrywide owed Brooks a good faith effort to assist in the extinguishment of his mortgage to Countrywide since they in fact forced place insurance and charged him for it and then never pursued the claim, all to Brooks' detriment. It seems that Countrywide was content to foreclose on Brooks' property and give him little or no assistance on matters he was owed a duty to receive.

### III.   <u>CONCLUSION</u>

Countrywide scoffs at Brooks inability to make sense out of the confusion Countrywide caused. It is their very record-keeping that caused Brooks to find himself in foreclosure. First, they started with a "work out" to get Brooks back on track on his mortgage payments with Countrywide's assumption of the mortgage when the storm destroyed the property. Then, with little or no assistance from Countrywide, Brooks seemingly got the mortgage satisfied, or at least he thought Defendant Countrywide had gotten enough money from their own forced place insurance policy to payoff the mortgage and have some extra to go toward restoring the property… all of whose efforts were Brooks alone. Brooks is now faced with the fact that the one year right of redemption has come and gone with certainly no agreed upon redemption

amount (there was no money for the property at 410 Hubbard Street applied to the redemption demand amount). But Brooks, as always, has contended that the redemption sum is incorrect as furnished by Countrywide's attorney Beth Rouse in that all the insurance proceeds have not been applied.

Respectfully submitted this 6th day of April, 2007.

J. E. Sawyer, Jr. (ASB 6566 S58J)
Attorney for Plaintiff
203 South Edwards Street
Enterprise, AL 36330
334/347-6447

Roy Brooks, Jr.

STATE OF ALABAMA

COUNTY OF COFFEE

Before me the undersigned authority, personally appeared Roy Brooks, Jr., who being by me first duly sworn, deposes and says that he has read the above and foregoing, that he understands same and that the matters therein contained are true and correct to the best of his knowledge.

Roy Brooks, Jr.

Sworn to and subscribed before me this the 6th day of April, 2007.

Notary Public

## CERTIFICATE OF SERVICE

I certify that on April 6, 2007, I have filed the above and foregoing electronically with the Clerk of Court using the CM/ECF system and that notice of my filing of same will be electronically served on Mr. Alan Warfield, Esquire.

                                                    /s/J. E. Sawyer, Jr.
                                                  J. E. Sawyer, Jr.